Our next case is Inovaport LLC v. Target Corporation 24-1545 Unless the court has any initial questions, I'd like to touch on the claim representativeness issue. Here, the court found that claim 15 of the 260 patent is representative, and there was no distinctive significance compared to all of the other claims. Now, Inovaport points to about three different limitations and focuses on those limitations, the first being a suggestion related to another product that's in the 670 and the 690 patent, and then a suggestion based on the user's past history from the 933 patent, and then finally, incorporation of a mobile device as the user interface from the 670 and the 690 patent. All of these claims are directed to the same abstract idea, suggesting a product or another product is really almost implicitly in claim 15 of the 260 patent. On appeal, are we able to just look at each of those individually and come to the conclusion that they don't satisfy either step one or step two and not worry about the representativeness of the claims and instead consider all of them? Yes, Your Honor, it is a de novo review, and this is an issue of law, and here, claim 15 of the 260 patent does provide additional product information. Now, there's different language that is used in the 670 and the 690 patent, which relates to a suggestion to another product, but providing information of another product isn't really distinctive. There's no distinctive significance compared to suggesting another product. Those are still related to the same abstract idea. Additionally— One of the arguments that opposing counsel is making, at least in the briefing, is that with respect to the Lowe's case, I think there was a different outcome on it, and it was at a different stage, right? It was at the 12 and 6 stage. What is your response to just that different outcome in the Lowe's case versus the outcome here in terms of the summer judgment stage? Yes, Your Honor, so that was the same judge down below, and in the Lowe's case, the issue at step one was that Lowe's incorrectly or improperly characterized the abstract idea. It did not focus or include the additional information that's provided beyond the product location information. So that was the issue that the court criticized at step one, that we overgeneralized or Lowe's overgeneralized the abstract idea for failing to acknowledge or even confront this additional product information. But the court didn't actually make a determination at step one and say, I've looked at these claims, and it is directed to an abstract idea or it is not directed to an abstract idea. It merely just rested on Lowe's made an improper characterization at step one and then moved to step two and said this idea of providing additional information at least facially, we don't have a developed record, but at least facially could be an inventive concept, but we need a more developed record to determine whether that's the case. Here, we got to summary judgment, we had a closed record, and in characterizing the abstract idea... Was fact discovery all concluded by the time you got to summary judgment just in terms of what had happened in terms of the timeline of the case? Yes, so fact discovery had concluded. The lower court's scheduling order was a little odd, if you will, because the fact discovery deadline actually came behind briefing on summary judgment. When you say behind, after you go to... After, after summary judgment briefing. So it was a little odd to have summary judgment briefing and then have a later deadline for fact discovery, but I think Mr. Griggs would agree that the parties had completed fact discovery by the time of summary judgment briefing. So turning back to the Lowe's case, at step two, the court found that this additional product information that's provided could at least facially provide an inventive concept. In this case, at step one, Target incorporated the additional product information into the abstract idea. The court agreed with that characterization, and then at step two, looking at the additional product information as an inventive concept, the court concluded that it's an abstract idea, and the abstract idea cannot provide the inventive concept, because here you're just providing different type of information. You have information related to product location, and also information related to price of the product, quantity of the product, maybe another product, but it's still just providing information in response to a user's query. So just going back briefly to the claim representative analysis, the mobile device being used as the user interface, first of all, the 260 patent, claim 15, does recite a user interface, and the specification has both user interfaces that are mobile devices and stationary devices, but what's interesting is the mobile device that's characterized in the specification, there was some discussion in the briefing that this had to be smartphones, and smartphones weren't around until 2007, 2008. That's not what the specification says in regards to a mobile device. In the 260 patent at column 14, lines 39 through 44 at appendix 63, it states that further embodiments of the invention that include additional capabilities tailored to the needs of the individual customer are possible through the use of handheld or otherwise mobile, preferably wireless, devices. This is column 14, lines 39 through 44 on appendix 63. And the second sentence there says, such devices can include, for example, telephone or walkie-talkie type units, headphones, specialized eyewear. Appendix 63 has columns 15 and 16. I'm not sure if I'm— Let me make sure I'm— You want me to look at. I might have had them incorrect. Okay, it's appendix 62. My apologies, Your Honor. Column 14, lines 39 through 44. Okay, thank you. So whether you look at claim 15 of the 260 patent as representative of all of the claims or you look additionally to the additional limitations and additional claims pointed out by Inovaport, they are all directed to the same abstract idea. They all take the long-standing human activity of interacting with a device interacting with clerks in a store and provide off-the-shelf computer technology performing conventional functionality to accomplish that abstract idea. So unless the Court has any further questions, I'll— No, thank you very much. Thank you. We've got three minutes. Thank you, Your Honor. Thank you. I'd like to address a couple of points. When I was up here before, we were talking about the technological advance, and I guess I would just like to remind the Court that at the 101 stage, which is just— it's a threshold issue, and I don't believe it should be that high of a bar to get over. We're looking at what the claims are directed to, right? We're not considering whether it actually is a technical advance. It's whether that's what is identified as a technological advance and that the claims are directed to those. Whether that is a technological advance is a question for 102. You're saying that there is no technological advance here? I'm sorry? There is no technological advance here in this case? No. We are asserting that when you look at the ordered combination in comparison with the state of the retail market environment in 1999, at the time that the specification was filed and the priority date, there was nothing like this system. Like I said, sort of like the eco-services case, it was an entirely new system and a way to use this type of technology that greatly improved over the system, if you want to call it, which was interacting with people at stores. I'd like to move on to another point that I don't want to get lost in this with respect to how the court is going to handle this and these issues here. And it relates to step two. As the court is probably aware, the district court made a finding with respect to what is well understood, routine, and conventional regarding the use of kiosks, citing to the Rowley reference. As we pointed out in our briefs, and it was recognized in Berkheimer, that's a factual question. So at the very least, it was inappropriate for the district court to resolve that issue on summary judgment. That's a factual question that should go to the jury. As we said, Rowley actually stands for the countervailing point that the district court cited it for. Rowley called the use of kiosks in the retail environment in stores rare and experimental at the time. You didn't raise this argument in your opening statement or your opening argument, did you? No, I did not. Correct. So it's not fair to do so now. Correct. Thank you. So unless the court has any other questions, that's all I have. We thank you. Thank you. We thank the parties for their arguments. We're taking this case under submission.